IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CORNELL RIVERS, SR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:15-CV-4002-G |
| | § | |
| BANK OF AMERICA N.A., | § | |
| | § | |
| Defendant. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to *Special Order No. 3-251*, this case was automatically referred for pretrial management. Before the Court for recommendation is *Defendant Bank of America, N.A.'s Motion to Dismiss Plaintiff Cornell Rivers, Sr.'s Petition and Its Memorandum of Law in Support of Its Motion to Dismiss*, filed December 23, 2015 (doc. 5).

## I.   BACKGROUND

This case involves the foreclosure of the property located at 1118 Fieldstone Drive, Cedar Hill, Texas 75104 (the Property). (*See* doc. 1-1 at 4; doc. 5 at 1.)[1] On November 20, 2015, Cornell Rivers Sr. (Plaintiff) filed this action against Bank of America, N.A. (Defendant). (doc. 1-1.)

On December 22, 2008, Plaintiff executed a promissory note in the original principal amount of $261,548.00, payable to the order of Realty Mortgage Corporation as well as a deed of trust securing payment of the note.[2] (doc. 5-2 at 21-36.) The deed of trust provided that Mortgage Electronic Registration Systems, Inc. (MERS) was a beneficiary under the deed of trust and acted solely as nominee for the Lender and Lender's successors and assigns. (*Id.* at 25.) It also provided

---

[1]Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

[2]Plaintiff's wife also executed the deed of trust. (*See* doc. 5-2 at 32.)

that MERS held legal title to the interests granted by Plaintiff in the deed of trust, and it had the right to exercise any and all of those interests, including the right to foreclose and sell the Property and to release and cancel the deed of trust. (*Id*. at 25.) On November 2, 2011, pursuant an Assignment of Deed of Trust (the Assignment), MERS assigned to Defendant all beneficial interest under the deed of trust together with the note and the obligations described in it. (*Id*. at 38-39.)

The Property was sold at a foreclosure sale on December 4, 2012. (*See* doc. 5 at 3.)

A.      **Prior Lawsuits**

On September 9, 2013, Plaintiff and his wife filed a Petition for Bill of Review alleging fraud and challenging the Assignment and the foreclosure sale of the Property in the Justice of the Peace Court, Dallas County (the First Related Lawsuit). (doc. 5 at 1.) Their petition was denied, and they appealed the denial to County Court at Law No. 1, Dallas County on March 3, 2013. (doc. 5 at 1; doc. 5-2 at 2.) The County Court at Law issued a judgment for possession of the Property in favor of Defendant on April 4, 2013, and a writ of possession was issued by the County Clerk. (doc. 5-2 at 4-5.)

On February 10, 2015, Plaintiff filed a lawsuit in state court against Defendant and Mackie, Wolf, Zientz & Mann, P.C. (the Second Related Lawsuit), which was subsequently removed to federal court. *See Rivers v. Bank of America, N.A*, No. 3:15-CV-1755-M, 2016 WL 721047, at *1 (N.D. Tex. Jan. 27, 2016). He asserted claims for breach of contract, fraud, and injunctive relief based on the alleged invalidity of the Assignment and Defendant's alleged lack of authority to foreclose because it was not the holder of the note. *Id*. at 2-6. On March 28, 2016, the Court dismissed his claims with prejudice. *Rivers v. Bank of America, N.A.*, No. 3:15-CV-1755-M, doc. 20 (N.D.Tex. Mar. 28, 2016).

2

On February 17, 2015, Plaintiff again sued Defendant and Mackie, Wolf, Zientz & Mann, P.C.[3] in state court (the Third Related Lawsuit), alleging Defendant lacked the authority to pursue foreclosure because it relied on an invalid assignment and was not the holder of the note.  (doc. 5-2 at 8-9.)  He asserted claims for violation of the Truth in Lending Act (TILA) and breach of contract, and he sought a declaration that the Assignment and the foreclosure sale were void, that Defendant had no rights to the Property, and that the note and deed of trust were no longer a lien against the Property.  (*Id*. at 9.)   Plaintiff's state court petition was subsequently removed to federal court, and his claims were dismissed without prejudice on May 5, 2016.  *Rivers v. Bank of America, N.A.*, No. 3:15-CV-704-B, doc. 18 (N.D. Tex. May 5, 2016).

On October 21, 2015, Plaintiff's wife sued Defendant and Dallas County in state court, bringing allegations and claims similar to those in the current lawsuit (the Fourth Related Lawsuit). *Rivers v. Bank of America, N.A.*, No. 3:15-CV-3774-M, doc. 1-1 at 3-66 (N.D. Tex. Nov. 23, 2016). The lawsuit was removed to federal court on November 23, 2015.  *Id*., doc. 1  (N.D. Tex. Nov. 23, 2016).  On May 2, 2016, it was recommended that Plaintiff's wife's claims be dismissed for failure to prosecute.  *Id*., doc. 11 (N.D. Tex. May 2, 2016).

B.    **Current Lawsuit**

In his state court petition, Plaintiff claims that he possesses the Property.  (doc. 1-1 at 4.)  He sues for "underlying violations of the Revised Statutes, Texas Debt Collection Act, Fair Debt Collection Practices Act (15 U.S.C. 1692), and the Texas Constitution of 1974 and for a Declaratory Judgment," and he seeks to prevent Defendant from conducting a sale of the Property or otherwise taking possession of the Property.  (*Id*. at 3.)  He also seeks production of the original or certified

---

[3]Plaintiff did not expressly assert any claims against Mackie,Wolf, Zientz & Mann, P.C.  (doc. 5-2 at 8 fn. 2.)

copies of the note, mortgage, and all documents showing all of the transfers and assignments of the note and mortgage in order to verify that Defendant is the "holder in due course" as defined in "Rev. Stat. 10:3-302" or representative of the holder in due course or holder of the note. (*Id*. at 4-5.) He contends that Defendant does not have authority to foreclose on the Property due to "fraud (intention deception)," an unlawful agreement that violates the "RICO Act and possession rights," and the fact that it is not the actual holder of the original note "with the treasury department." (*Id*.) He "allegedly" signed a promissory note in order to rent the Property, and he now has "rights to ownership and possession as to acts of fraud as to the defendants." (*Id*. at 5.) Defendant[4] allegedly entered into an agreement without his knowledge concerning other interested parties who operated under other identities and continue to violate the "RICO Act." (*Id*.) He claims that Defendant allegedly refuses to pull a pending Sheriff's sale and intends to pursue "this collection action by executing the executory process of the Sheriff's jurisdiction by acts of fraud which need to be reported to the police." (*Id*.) He also claims that the "note/mortgage and or agreement" are rescinded pursuant to Title 15 U.S.C. § 1635, due to monies owed and fraud, and that he was denied proper counsel at hearings and trials. (*Id*.)

The petition expressly asserts claims for violation of "Art. 2635, " "R.S. 51: 1409," and Fair Debt Collection Practices Act (FDCPA), as well as for declaratory judgment. (*Id*. at 6-7.) It may also be liberally construed as asserting claims for fraud and violations of the Texas Deceptive Trade Practices Act (DTPA), the Racketeer Influenced and Corrupt Organizations (RICO) Act, the Texas Debt Collection Practices Act (TDCPA), and TILA, as well as a claim for injunctive relief. (*Id*. at 3-8.)

---

[4]He actually writes "Plaintiff," but it appears from the context of the paragraph and the petition that he meant "Defendant." (*See* doc. 1-1 at 5.)

On December 18, 2015, Defendant removed the action to federal court on the basis of federal question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332. (doc. 1.)  It moved to dismiss Plaintiff's petition for failure to state a claim a few days later.  (doc. 5.)  Plaintiff has failed to file a response.

## II.   RULE 12(b)(6) MOTION

Defendant moves to dismiss Plaintiff's petition under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  (doc. 5.)

## A.   <u>Legal Standard</u>

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted.  *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981).  Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981).  Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal.  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *Baker*, 75 F.3d at 196.  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted).  Nevertheless, a plaintiff must provide "more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."
*Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted).  When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion.  *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196.  When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss, the Court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion.  *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz  Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007).  "If . . . matters outside the pleading[s] are presented to and not excluded by the court," however, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).

"Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Likewise, documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]." *Collins*, 224 F.3d at 499 (quotations omitted); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003). It is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).

Plaintiff attaches to his petition copies of: (1) the citation issued to him and wife as part of an eviction suit brought by Defendant; (2) the April 4, 2013 Final Judgment for Possession entered in the First Related Lawsuit; (3) an affidavit executed by him in support of his petition, which appears to largely duplicate the petition; (4) a document entitled "Declaratory Judgment" signed by Plaintiff that purports to grant him judgment, and that decrees that Defendant has no standing to foreclose on the Property because it is a debt collector as defined by 15 U.S.C. § 1692, has produced no authentic evidence, and is not the original creditor; and (5) a notice of lis pendens. (doc. 1-1 at 26.) These documents are considered part of the pleadings. *See Katrina Canal Breaches Litig.*, 495 F.3d at 205.

Defendant attaches to its motion copies of : (1) the Order Denying Plaintiff's Bill of Review in the First Related Lawsuit; (2) the Writ of Possession that Defendant obtained for possession of the Property; (3) the August 2015 Memorandum Opinion and Order entered in the Second Related Lawsuit; (4) the note; (5) the deed of trust; and (6) the Assignment. (doc. 5-2.) The note, deed or

trust, and Assignment are referenced in Plaintiff's petition and are central to his claims, and they are therefore considered part of the pleadings.  All the other documents, as well as the deed of trust, are matters of public record that can be judicially noticed in considering a Rule 12(b)(6) motion.  *See* Fed. R. Evid. 201(b)(2); *Matter of Manges*, 29 F.3d 1034, 1042 (5th Cir. 1994) (taking judicial notice of "unimpeached certified copies of ... deeds and assignments").  Because the documents attached to Defendant's motion to dismiss are part of the pleadings or subject to judicial notice, they may be considered without conversion of its motion into a motion for summary judgment.  *See* *Norris*, 500 F.3d at 461 n.9.

**B.**     **Authority to Foreclose - "Split-the-Note"/"Show-me-the-Note" Theories**

Defendant argues that Plaintiff appears to challenge its authority to foreclose based on its failure to hold the original note.  (doc. 5 at 5-6.)  It argues that this challenge is based on the flawed "split-the-note" and "show-me-the-note" theories and therefore it fails to state a claim.  (*Id.*)

Plaintiff's argument that Defendant is not the holder of the note implicates the "split-the-note" theory.  *See Enis v. Bank of Am., N.A.*, No. 3:12-CV-0295-D, 2012 WL 4741073, at *2 (N.D. Tex. Oct. 3, 2012).  The "split-the-note" theory states "that a transfer of a deed of trust by way of MERS 'splits' the note from the deed of trust, thus rendering both null.  In order to foreclose, the theory goes, a party must hold both the note and the deed of trust."  *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 254 (5th Cir. 2013) (citations omitted).  Plaintiff's claim that Defendant does not have authority to foreclose because it does not own or hold the original note implicates the "show-me-the-note" theory.  *See Bennett v. JPMorgan Chase*, No. 3:12-CV-212-N, 2012 WL 2864751, at *3 (N.D. Tex. June 12, 2012), *rec. adopted*, 2012 WL 2864467 (N.D. Tex. July 12, 2012).  "Advocates of this theory believe that only the holder of the original wet-ink

signature note has the lawful power to initiate a non-judicial foreclosure." *Wells v. BAC Home Loan Servicing, L.P.*, No. W-10-CA-00350, 2011 WL 2163987, at * 2 (W.D. Tex. Apr. 26, 2011) (internal quotations omitted).

Both theories have been widely rejected by courts in Texas. *See Martins*, 722 F.3d at 254–55. Specifically, "Texas courts have refused to conflate foreclosure with enforcement of a promissory note." *Reardean v. CitiMortgage, Inc.*, No. A-11-CA-420-SS, 2011 WL 3268307, at *3 (W.D. Tex. July 25, 2011). Under Texas law, promissory notes and deeds of trust are distinct obligations that afford lenders distinct remedies upon default, "the note against the borrower and the lien against the real property." *Bierwirth v. BAC Home Loans Servicing, L.P.*, No. 03–11–00644–CV, 2012 WL 3793190, at *3 (Tex. App.—Austin Aug.30, 2012, no pet.) (mem. op.). When the lender seeks a personal judgment against the borrower, it "must typically demonstrate that it is the holder of the note by producing the original wet-ink instrument." *Millet v. JP Morgan Chase, N.A.*, No. SA-11-CV-1031-XR, 2012 WL 1029497, at *3 (W.D. Tex. Mar. 26, 2012).[5] By contrast, "[f]oreclosure is an independent action against the collateral" that "enforces the deed of trust, not the underlying note." *Reardean*, 2011 WL 3268307, at *3.

Courts have held that where MERS, a "book entry system", is the "mortgagee" and "is given the power of sale under the deed of trust, then it has the power of sale." *Willeford v. Wells Fargo Bank, N.A.*, No. 3:12-CV-0448-B, 2012 WL 2864499, at *2 (N.D. Tex. July 12, 2012).[6] "MERS

---

[5]  The Texas Uniform Commercial Code (UCC) governs the procedure for establishing "holder" status. *See* Tex. Bus. & Com. Code Ann. §§ 3.201, 3.203,and 3.204 (West 2002) (providing the requirements for the negotiation, transfer, and endorsement of negotiable instruments).

[6]A "mortgagee" is "the grantee, beneficiary, owner, or holder of a security instrument"; "a book entry system"; or "if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record." Tex. Prop. Code Ann. § 51.0001(4)(A)–(C).

also has the authority to transfer the power of sale *by assigning the deed of trust*." *Id.* (emphasis added); *accord Enis*, 2012 WL 4741073, at *2 ("Because under the deed of trust MERS held the power of sale, BOA received that power when it was assigned the deed of trust.").  Moreover, courts in this Circuit have also held that the transfer of the note or deed of trust automatically transfers the other because they "must be read . . . and construed together as a single instrument." *Warren v. Bank of Am., N.A.*, No. 3:11-CV-3603-M, 2012 WL 3020075, at *4 (N.D. Tex. June 19, 2012), *rec.adopted*, 2012 WL 3024746 (N.D. Tex. July 24, 2012); *Islamic Ass'n of DeSoto, Texas, Inc.v. Mortgage Elec. Registration Sys., Inc.*, No. 3:12-CV-3:12-CV-0613-D, 2012 WL 2196040, at *3 (N.D. Tex. June 15, 2012) (Fitzwater, C.J.) ("[T]he transfer of an obligation secured by a note also transfers the note because the deed of trust and note are read together to evaluate their provisions.") (internal quotations omitted); *Kramer v. Fannie Mae*, No. A-12-CA-276-SS, 2012 WL 3027990, at *5 (W.D. Tex. May 15, 2012) (same) (listing cases).

Here, MERS was the original mortgagee because it is a "book entry system" and was the "beneficiary" of the deed of trust.  *See* Tex. Prop. Code Ann. § 51.0001(4)(A)–(B); (*see also* doc.5-2 at 25).  When it assigned the deed of trust, Defendant became the new mortgagee and acquired all of MERS's rights.  *See* Tex. Prop. Code  § 51.0001(4)(A),(C).  As the new mortgagee, Defendant had all of the rights that Plaintiff granted the lender under the deed of trust, including the power of sale on default.  *See id.*; (*see also* doc. 5-2 at 26).  Defendant could exercise that right without having to produce the original promissory note.  *See Martins*, 722 F.3d at 255; *Asonibe v. Flagstar Bank, FSB*, No. 3:12-CV-2113-M BH, 2013 WL 1828842, at *6 (N.D. Tex. Apr. 5, 2013), *rec. adopted*, 2013 WL 1831747 (N.D. Tex. Apr. 30, 2013) ("As the new mortgagee, Defendant could foreclose on the Property upon Plaintiffs' default without having to produce the note or deed of

trust.").

In conclusion, Plaintiff's allegation that Defendant could not foreclose on the Property because it is not the holder of the note and it did not own or hold the original note cannot support a claim against it as a matter of law. *See Enis*, 2012 WL 4741073, at *2; *Martins*, 722 F.3d at 255. To the extent Plaintiff premises any of his claims for relief on his "split-the-note" or "show-me-the-note" theories, the claims are subject to dismissal for failure to state a claim.

**C.     Violation of LSA-C.C.P. Art. 2635 and LSA-R.S. 51.1409**

Defendant also seeks to dismiss Plaintiff's claims for violation of LSA-C.C.P. Art. 2635 and LSA-R.S. 51:1409, both of which are Louisiana statutes. (doc. 5 at 6.)

Plaintiff contends that Defendant did not show "evidence of any authentic evidence" upon which an executory process could be initiated pursuant to "Art. 2635," which requires a party to submit certain authentic evidence with its petition in order to enforce a mortgage, security agreement or privilege. (doc. 1-1 at 6.) He also argues that Defendant is attempting, through deceptive trade practices, to seize and sell the Property without having the secured rights as a creditor under "R.S. 51:1409." (*Id.*) Both Art. 2635 and R.S. 51:1409 are Louisiana statutes. *See* La. Code Civ. P. art. 2635; La. Rev. Stat. Ann. § 51:1409. Plaintiff is not, however, a Louisiana resident (*see* doc. 1-1 at 3), and he does not allege that any of the purported violations occurred in Louisiana. He acknowledges that Defendant operates in Texas and that the Property is located in Texas. Texas law applies, and Plaintiff has failed to allege a cause of action pursuant to these statutes that is actionable under Texas law.

**D.     Violation of the DTPA**

Defendant next argues that to the extent Plaintiff intends to bring a cause of action for

violation of the DTPA, he fails to allege sufficient facts to meet the minimum pleading standard in *Twombly*, or to indicate that he is a "consumer" under the DTPA.  (doc. 5 at 7.)

The elements of a cause of action under the DTPA are: "(1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages."  *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995); *see also* Tex. Bus. & Com. Ann. Code § 17.50(a)(1) (West 2011). The DTPA defines "consumer" in relevant part, as "an individual . . . who seeks or acquires by purchase or lease, any goods or services."  Tex. Bus. & Com. Code Ann. § 17.45(4) (West 2007). To be a consumer, "a person must have sought or acquired goods or services by purchase or lease" and those goods or services "must form the basis of the complaint."  *Hurd*, 880 F. Supp. 2d at 766 (citing *Cameron v. Terrell & Garrett*, 618 S.W.2d 535, 539 (Tex. 1981)).  Because the lending of money is not a good or service, a borrower whose sole objective is to obtain a loan is not a consumer under the DTPA.  *Walker v. Fed. Deposit Ins. Corp.*, 970 F.2d 114, 123 (5th Cir. 1992) (citing *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169 (Tex. 1980)).  "A mortgagor qualifies as a consumer under the DTPA," however, "if his or her primary objective in obtaining the loan was to acquire a good or service, and that good or service forms the basis of the complaint."  *Miller v. BAC Home Loans Serv., L.P.*, 726 F.3d 717, 724–25 (5th Cir. 2013)(citing to *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705 (Tex. 1983) and *Riverside Nat'l Bank*, 603 S.W.2d at 175).

Here, Plaintiff does not reference any sections of the DTPA, only Louisiana's statute regarding deceptive trade practices.  As noted, he argues as part of his claim for violation of LSA-R.S. 51.1409 that Defendant is attempting to seize and sell the Property without having the secured rights of a creditor. (doc. 1-1 at 6.)  He also argues that it is his belief that Defendant does not have

authority to foreclose on the Property due to "fraud (intentional deception)."  (*Id*. at 4.)

Even if Plaintiff intends to bring a claim under the DTPA, he has failed to allege facts showing he qualifies as a consumer.  His claims are premised on Defendant's allegedly deceptive actions concerning the foreclosure of the Property, and its efforts to take possession of the it.  They are not based on Defendant's alleged actions related to financing the purchase of the Property; Plaintiff even alleges that Defendant is not the holder of the note.  Therefore, the acts related to the attempted foreclosure of the Property, rather than the Property itself, form the basis of his DTPA claim. *See Rojas v. Wells Fargo Bank, N.A.*, 571 F. App'x 274, 279 (5th Cir. 2014)( "[Plaintiff] is not a consumer under this definition because the basis of her claim is the subsequent loan servicing and foreclosure activities, rather than the goods or services acquired in the original transaction); *Gatling v. CitiMortgage, Inc*., No. H-11-2879, 2012 WL 3756581, at *13 (S.D.Tex. Aug. 28, 2012)(holding plaintiff was not a consumer under the DTPA where "her claim [was] based on acts occurring years after the financing transaction with [defendant]" and finding "how [plaintiff's] loan was administered–and the problems subsequently attending that administration–'is merely incidental to [her] prior objective to purchase a residence'")(citing *Woods v. Bank of Am., N.A.*, Civ. A. No. 3:11-CV-1116-B, 2012 WL 1344343, at *7 (N.D.Tex. Apr. 17, 2012)).  Plaintiff does not qualify as a consumer for purposes of the DTPA, and the motion to dismiss this claim should be granted.

## E.     FDCPA

Defendant argues that Plaintiff's FDCPA claim should be dismissed because he fails to allege that it is a "debt collector" as defined by the Act.[7]  (doc. 5 at 8.)

---

[7]Defendant also argues that Plaintiff's FDCPA claims should be dismissed because the activity of foreclosing on a property pursuant to a deed of trust is not the collection of debt within the meaning of the FDCPA.  (doc. 5 at 8.) Although Defendant cites to authority for this argument (*see id*.), "whether the initiation of foreclosure proceedings qualifies as collecting a debt under the FDCPA remains an open question in the Fifth Circuit."  *See Turner v. Nationstar Mortgage, LLC*, No. 3:14-CV-1704-L, 2015 WL 585598, at *5 (N.D. Tex. Feb. 11, 2015); *Fath v. BAC Home Loans*,

The FDCPA "is designed 'to eliminate abusive debt collection practices by debt collectors.'" *Watson v. Aurora Loan Services LLC*, No. 4:11-CV-301-BJ, 2012 WL 3594233, at *7 (N.D. Tex. Aug. 21, 2012) (citing 15 U.S.C. § 1692(e)).  It "prohibits a 'debt collector' from: 1) using 'any false, deceptive, or misleading representation or means in connection with the collection of any debt' as well as 2) using 'unfair or unconscionable means to collect or attempt to collect any debt.'" *Garcia v. Jenkins/Babb LLP*, No. 3:11-CV-3171-N-BH, 2012 WL 3847362, at *6 (N.D. Tex. July 31, 2012), *rec. adopted*, 2012 WL 3846539 (N.D. Tex. Sept. 5, 2012)(citing 15 U.S.C. §§ 1692e and1692f).

Under the Act, a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* § 1692a(6).  There are two categories of debt collectors:  those who collect debts as the "principal purpose" of their business, and those who collect debts "regularly." *Garcia*, 2012 WL 3847362, at *6 (citing *Hester v. Graham, Bright & Smith, P.C.*, 289 F. App'x 35, 41 (5th Cir. 2008)).  "A person may 'regularly' collect debts even if debt collection is not the principal purpose of his business." *Id.*  "Whether a party 'regularly' attempts to collect debts is determined, of course, by the volume or frequency of its debt collection activities." *Id.* (citing *Brown v. Morris*, 243 F. App'x 31, 35 (5th Cir. 2007)).  Notably, the Act exempts from this definition "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt *which was originated by such*

---

No. 3:12-CV-1755-O, 2013 WL 3203092, at *12 (N.D. Tex. June 25, 2013); *Caldwell v. Flagstar Bank, FSB*, No. 3:12-CV-1855-K, 2013 WL 705110, at *10-11 (N.D.Tex. Feb. 4, 2013), *rec. adopted*, 2013 WL 705876 (N.D.Tex. Feb. 26, 2013); *see also Brooks v. Flagstar Bank, FSB*, Civ. A. No. 11-67, 2011 WL 2710026, at *6 (E.D.La. July 12, 2011)(citing *Zaltenbach v. Richards*, 464 F.3d 524, 529 n.5 (5th Cir. 2006).  Because Plaintiff's FDCPA claim is subject to dismissal on other grounds, there is unnecessary to reach this argument.

*person.*" 15 U.S.C. § 1692g(a)(6)(F) (emphasis added).  Under this exception, courts have concluded that "[t]he term 'debt collector' does not include lenders[,] . . . the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Gipson v. JPMorgan Chase*, No. 3:13-CV-2477-L, 2013 WL 3746003, at *2 (N.D. Tex. July 17, 2013) (citing *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208, *modified on reh'g on other grounds*, 761 F.2d 237 (5th Cir. 1985)).

Plaintiff contends that Defendant violated § 1692(e)(4) of the FDCPA, and that he is a consumer and Defendant is a debt collector under the FDCPA.  (doc. 1-1 at 7.)  Defendant, as a debt collector, has no valid claim or interest in the Property as does the original creditors due to "fraud and Plaintiff['s] possession rights."  (*Id.*)  His conclusory allegations fail to show that Defendant was either engaged "in any business the principal purpose of which [was] the collection of any debts" or that it "regularly collected or attempted to collect ... debts."  *See* 15 U.S.C. § 1692a(6). Additionally, he does not assert, and nothing in the pleadings indicates, that the debt was in default at the time of the assignment.  *See Garcia*, 2012 WL 3847362, at *6–7 (dismissing FDCPA claims after finding that the plaintiffs' recitation of the statutory language, without any facts in support, was insufficient to plausibly allege that the defendants were "debt collectors" under the Act); *see also Iqbal*, 556 U.S. at 678 (to state a claim, a plaintiff must plead sufficient facts to make the claim "plausible on its face"); *Guidry*, 954 F.2d at 281 (well-pleaded facts are needed to avoid dismissal). Defendant's motion to dismiss this claim should be granted.

## F.    Declaratory Judgment

Defendant argues that Plaintiff's request for a declaratory judgment fails as a matter of law because it is not a stand-alone cause of action, and because all of his substantive claims are subject

to dismissal.  (doc. 5 at 9.)

Plaintiff's request for declaratory relief in his state court petition arises under the Texas Declaratory Judgments Act, codified in §§ 37.001-37.011 of the Texas Civil Practice & Remedies Code.  (*See* doc. 4 at 8-9.)  "The Texas act is a procedural, rather than substantive, provision, and would generally not apply to a removed action such as this one."  *Brock v. Fed. Nat'l Mortg. Ass'n*, 2012 WL 620550, at *5 (N.D. Tex. Feb. 24, 2012) (citing *Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998)).  In light of its removal from state court, the action may be construed as one brought under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.  *See Bell v. Bank of Am. Home Loan Servicing LP*, 2012 WL 568755, at *8 (S.D. Tex. Feb. 21, 2012) (holding that "[w]hen a declaratory judgment action is filed in state court and is subsequently removed to federal court, it is converted to one brought under the federal Declaratory Judgment Act").

The federal Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.  The federal Declaratory Judgment Act "does not create a substantive cause of action" and "is merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law."  *Metropcs Wireless, Inc. v. Virgin Mobile USA, L.P.*, 2009 WL 3075205, at *19 (N.D. Tex. Sept. 25, 2009) (Fitzwater, C.J.) (citations and internal quotation marks omitted).  The Act is an authorization and not a command, and allows federal courts broad (not unfettered) discretion to grant or refuse declaratory judgment.  *Id.*

Here, Plaintiff seeks a declaration that any attempt to foreclose or evict pursuant to the

statutes for executory foreclosure process and "FDCPA law" is an action to collect a debt, and therefore Defendant must produce the authentic, signed note before evicting or foreclosing.  (doc. 1-1 at 7-8.)  Because he fails to state a plausible substantive claim for relief or show that a present genuine controversy exists between the parties, Defendant's motion should be granted.  *See Bell*, 2012 WL 568755, at *8 (denying the plaintiff's request for declaratory judgment where she had alleged no facts leading to a conclusion that a present controversy existed between her and the defendant); *Turner v. AmericaHomeKey, Inc.*, No. 3:11-CV-0860-D, 2011 WL 3606688, at *5–6 (N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.), *aff'd*, 2013 WL 657772 (5th Cir. Feb. 22, 2013) (declining to entertain the plaintiff's request for declaratory judgment where he had not pleaded a plausible substantive claim).

## III.  REMAINING CLAIMS

Although not expressly listed as claims, the allegations in Plaintiff's petition may be liberally construed as also asserting claims for fraud, violation of the RICO Act, the Texas Debt Collection Practices Act (TDCPA), and TILA, and injunctive relief.  The Court may *sua sponte* dismiss these claims on its own motion under Rule 12(b)(6) for failure to state a claim as long as Plaintiff has notice of the Court's intention and an opportunity to respond.  *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006) (citing *Shawnee Int'l., N.V. v. Hondo Drilling Co.*, 742 F.2d 234, 236 (5th Cir. 1984)).  The fourteen-day time frame for filing objections to a recommended dismissal provides Plaintiff with notice and an opportunity to respond.  *See Ratcliff v. Coker*, No. 9:08-cv-127, 2008 WL 4500321, at *3 n. 1 (E.D. Tex. Sept. 26, 2008).

## A.   <u>Common Law Fraud</u>

Plaintiff contends that Defendant does not have the authority to foreclose due to fraud.  (doc.

1-1 at 4.)

In Texas, the elements of common-law fraud are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation, the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury. *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032–33 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).

As discussed, Plaintiff's claim that Defendant does not have authority to foreclose because it is not the holder of the note and does not own or hold the original note fails to state a claim because it is based on the flawed split-the-note and show-me-the-note theories. Also, Plaintiff does not allege facts sufficient to show that Defendant made a false representation to him. Nor has he sufficiently pled that the representation was material, that Defendant knew it was false or made the representation recklessly and without knowledge of its truth, or that he relied on the representation. Accordingly, any fraud claim should be dismissed for failure to state a claim.

**B.    RICO**

Plaintiff alleges that Defendant violated the RICO Act by entering into an agreement without his knowledge with other interested parties who operated under other identities. (doc. 1-1 at 4-5.)

In their simplest terms, the four subsections of the RICO Act, 18 U.S.C. § 1962, provide:

(a) a person who has received income from a pattern of racketeering activity cannot invest that income in an enterprise;

(b) a person cannot acquire or maintain an interest in an enterprise through a pattern of

18

racketeering;

(c) a person who is employed by or associated with an enterprise cannot conduct the affairs of the enterprise through a pattern of racketeering activity; and

(d) a person cannot conspire to violate subsections (a), (b), or (c).

*See Abraham v. Singh*, 480 F.3d 351, 354-55 (5th Cir. 2007); *Crowe v. Henry*, 43 F.3d 198, 203 (5th Cir. 1995). All four subsections have three common elements: "1) a *person* who engages in 2) a *pattern of racketeering activity*, 3) connected to the acquisition, establishment, conduct, or control of an *enterprise*." *Crowe*, 43 F.3d at 204 (alteration in original). A RICO "person" may be "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3); *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 439 (5th Cir. 2000).

To state a claim under any subsection, "a plaintiff must plead specific facts . . . which establish the existence of an enterprise." *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989); *accord State Farm Mut. Auto. Ins. Co. v. Giventer*, 212 F. Supp. 2d 639, 649-50 (N.D. Tex. 2002). An enterprise is defined as "any individual partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). To establish an association-in-fact, a plaintiff must demonstrate "evidence of an ongoing organization, formal or informal, and ... evidence that various associates function as a continuing unit." *Crowe*, 43 F.3d at 205 (internal citation and quotation omitted). Continuity is a necessary attribute of an association-in-fact enterprise. *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 243 (5th Cir. 1988), *cert. denied*, 489 U.S. 1079 (1989). An association-in-fact enterprise "(i) must have an existence separate and apart from the pattern of racketeering, (ii) must be an ongoing organization[,] and (iii) its members must function as a continuing unit as shown by a hierarchical or consensual decision making structure." *Crowe*, 43 F.3d at 205; *Delta Truck*, 855 F.2d at 243.

A plaintiff must plead specific facts that establish that the association exists for purposes other than to simply commit the predicate acts.  *Elliot*, 867 F.2d at 881.

Plaintiff has pled no facts that suggest, let alone establish, the existence of an enterprise. Even assuming for purposes of this motion that he intends to bring his claim against Defendant as part of an association-in-fact enterprise, he has failed to allege any facts to support a reasonable inference that Defendant is part of an ongoing organization with a hierarchical or consensual decision-making structure that has an existence separate from the pattern of racketeering.  *See Crowe*, 43 F.3d at 205.  Plaintiff has failed to adequately plead a RICO enterprise.  *See Elliot*, 867 F.2d at 881.  His RICO claim should therefore be dismissed.

## C.     **TDCPA**

Plaintiff alleges that he filed his petition due to underlying violations of the TDCPA.  (doc. 1-1 at 3.)

"The TDCPA prohibits debt collectors from using various forms of threatening, coercive, harassing or abusive conduct to collect debts from consumers."  *Merryman v. JPMorgan Chase & Co.*, No. 3:12-CV-2156-M, 2012 WL 5409735, at *4 (N.D. Tex. Oct. 12, 2012), *rec. adopted*, 2012 WL 5409749 (N.D. Tex. Nov. 5, 2012).  It defines "debt collector," in relevant part, as "a person who directly or indirectly engages in debt collection."  Tex. Fin. Code Ann. § 392.001(6) (West 2006).  In turn, "debt collection" is defined as "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor."  *Id.* § 392.001(5).

Plaintiff fails to identify the specific provisions of the TDCPA that Defendant allegedly violated.  This failure alone warrants dismissal of his TDCPA claim, to the extent he intends to bring

one.  *See Wilson v. Wells Fargo Bank, N.A.*, No. 3:13-CV-2257-O, 2014 WL 815352, at *7

(N.D.Tex. Mar. 3, 2014) (finding dismissal of Plaintiff's TDCPA claim was warranted where he did

not identify the specific provisions of §§ 392.303(a) or 392.304(a) or a particular "prohibited

practice" that the defendant allegedly violated); *see also Iqbal*, 556 U.S. at 678 (finding that to

survive dismissal, the complaint must provide sufficient "factual content [to] allow[] the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged").  Any TDCPA

claim should be dismissed.

### D.    TILA

Plaintiff claims that Defendant's "note/mortgage" is now rescinded pursuant to 15 U.S.C.

§ 1635, due to monies owed and fraud.  (doc. 1-1 at 5.)  His allegation can be liberally construed as

asserting a claim under TILA.

TILA "has the broad purpose of promoting 'the informed use of credit' by assuring

'meaningful disclosure of credit terms' to consumers."  *Schieroni v. Deutsche Bank Nat. Trust Co.*,

No. CIV.A. H-10-663, 2011 WL 3652194, at *3 (S.D. Tex. Aug. 18, 2011) (citations omitted); *see*

*also* 15 U.S.C. § 1601; 12 C.F.R. § 226.1(b).  In certain credit transactions involving a lien on the

borrower's principal dwelling, the borrower has "the right to rescind the transaction until midnight

of the third business day following [its] consummation."  15 U.S.C. § 1635(a) (West 2011); 12

C.F.R. § 226.23(a).  The creditor must disclose this right to the borrower and provide him with the

appropriate forms to enable him to exercise it.  *See* 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(b).

TILA expressly provides that the right of rescission does not apply to residential mortgage

transactions.  15 U.S.C. § 1635(e)(1); *Green v. Bank of America, N.A.*, No. H-13-1092, 2013 WL

3937070, at *5 (S.D.Tex. July 30, 2013);  *Harris v. First Franklin Financial Corp.*, No. 4:09-3698,

2010 WL 4226449, at *4 (S.D.Tex. Oct. 20, 2010).   A residential mortgage transaction is "a transaction in which a mortgage [or] deed of trust ... is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." *Id*. § 1602(w); *Green*, 2013 WL 3937070, at *5, *Harris*, 2010 WL 4226449, at *4.   Because Plaintiff's mortgage is a residential mortgage, his right of rescission claim under TILA necessarily fails.

Even if the right of rescission was applicable to residential mortgages, Plaintiff's claim would be barred by limitations.   The limitations period for a right of rescission claim under TILA is "three years after the date of the consummation of the transaction ... notwithstanding the fact that the information and forms required under [§ 1635(a)] or any other disclosures ... have not been delivered to the obligor." 15 U.S.C. § 1635(f).   In *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 419 (1998), the Supreme Court held that TILA "permits no federal right to rescind ... after the 3-year period of § 1635(f) has run."   Accordingly, courts have held that § 1635(f) "mirrors a typical statute of repose" in that it absolutely bars rescission claims filed more than three years after the loan transaction is consummated.  *See Renfrow v. CTX Mortg. Co.*, LLC, No. 3:11-CV-3132-L, 2012 WL 3582752, at *5 (N.D. Tex. Aug. 20, 2012) (collecting cases).   Because Plaintiff's credit transaction was consummated on December 22, 2008, any right of rescission violation occurred on that date. *See Val-Com Acquisitions Trust v. Bank of Am.*, N.A., No. 3:10-CV-01965-M, 2011 WL 2312284, at *2 (N.D. Tex. June 9, 2011); *see also* 15 U.S.C. §§ 1635(a).   Because the limitations period for his right of rescission claim expired on December 22, 2008, Plaintiff's right of rescission claim under TILA should be dismissed in the alternative as time-barred.

E.     **Injunctive Relief**

Plaintiff seeks to enjoin Defendant from conducting a sale of the Property and from taking

possession of the Property or otherwise disturbing or attempting to disturb Plaintiff's peaceable possession and enjoyment of the Property.   (doc. 1-1 at 3, 8.)

To obtain injunctive relief, a plaintiff "is required to plead and prove, inter alia, 'a substantial likelihood of success on the merits.'"  *Jackson v. Fed. Home Loan Mortg. Corp.*, No. 4:11-CV-507-A, 2011 WL 3874860, at *3 (N.D. Tex. Sept. 1, 2011) (citing *DSC Commc'ns Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996)).  Because dismissal of all Plaintiff's claims is warranted on the merits, he cannot establish any likelihood of success on the merits.  *See Jackson*, 2011 WL 3874860, at *3.  Accordingly, his request for injunctive relief should be denied.

## IV.  OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted.  *See Scott v. Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001).  Courts therefore typically allow *pro se* plaintiffs to amend their complaints when the action is to be dismissed pursuant to a court order.  *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2.  A *pro se* plaintiff may also obtain leave to amend his complaint in response to a recommended dismissal.  *See Swanson v. Aegis Commc'ns Grp., Inc.*, No. 3:09-CV-0041-D, 2010 WL 26459, at * 1 (N.D. Tex. Jan. 5, 2010); *Scott*, 2008 WL 398314, at * 1.  Nonetheless, courts may appropriately dismiss an action with prejudice without giving an opportunity to amend when the plaintiff fails to respond to a motion to dismiss after being specifically invited to do so by the court, the defendant has specifically noted the failure to respond, and the plaintiff has had ample opportunity to amend the

complaint.  *Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995).  Dismissal with prejudice is also appropriate if a court finds that the plaintiff has alleged his or her best case.  *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Here, Plaintiff has not amended his petition since filing this action.  Despite the fact that he or his wife have filed previous lawsuits with the same or similar causes of action against Defendant, not all of the claims alleged in the current lawsuit have been pled in one of more of the prior lawsuits.  Accordingly, it does not appear that he has alleged his best case.  Out of an abundance of caution, he should therefore be accorded an opportunity to amend his petition to sufficiently state a claim for relief.

## V.   RECOMMENDATION

If Plaintiff does not file an amended complaint within the 14 days allowed for objections to this recommendation, or a deadline otherwise set by the Court, Defendant's motion to dismiss should be **GRANTED**, and Plaintiff's claims should be dismissed with prejudice.  If Plaintiff timely files an amended complaint, however, Defendant's motion to dismiss should be **DENIED as moot**, and the action should be allowed to proceed on the amended complaint.

**SO RECOMMENDED** on this 3rd day of June, 2016.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

25